# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALAN REYNOLDS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 3:13-396 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant.* | § | |

## **REPORT AND RECOMMENDATION**

Alan Reynolds ("Reynolds") seeks review of an adverse decision on his applications for disability-based benefits under the Social Security Act.

### I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Within the ambit of this limited authority resides inherent power to reverse and remand administrative decisions that are unclear, confusing or otherwise insusceptible to meaningful judicial review.[1]

---

[1] *See* 5 U.S.C. § 557(C)(3)(A) (Administrative law judge's opinion must contain "findings and conclusions, and the reasons or bases therefor, on all material issues of fact, law or discretion presented on the record."); 5 U.S.C. § 706(2)(E)(reviewing court shall set aside agency action, findings, and conclusions found to be "unsupported by substantial evidence"); *see also Peck v. Colvin*, No. 8:12-cv-02594-DCN, 2014 WL 994925, at *3 (D.S.C. Mar. 13, 2014)("courts have remanded cases where the reasoning for the ALJ's conclusion 'is lacking and therefore presents inadequate information to accommodate a thorough review'") (quoting *See v. Wash. Metro. Area Transit Auth.*, 36 F.3d 375, 384 (4th Cir. 1994)).

## II. Background[2]

Reynolds applied for disability insurance benefits alleging disability due to attention deficit hyperactivity disorder ("ADHD"), depression, alcoholism, and cocaine abuse commencing April 30, 2007. (T. 224-27, 231-34, 274).[3] His claim was denied initially, after which he requested an evidentiary hearing. The matter was assigned to administrative law judge, Robert E. Gale ("ALJ Gale"), who conducted that hearing. (T. 104, 68-97). Reynolds attended and testified. (*Id.*). Reynolds was represented at the hearing by E. Cynthia Richard, a

---

[2] Reynolds's personal misfortunes are not critically relevant to the current action. For reference, however, the following summary is provided:

Born in 1956, Reynolds reportedly was verbally and physically attacked in high school by his classmates. (T. 923). He graduated in 1974, and attended Broome County Community College, graduating in 1977 with a degree in business. (*Id.*). He worked at various jobs over the years, including factory work, computer work (1985-2002), grocery store, and restaurant. (*Id.*). Reynolds has been unemployed since 2007. (*Id.*).

Reynolds experienced symptoms from mental impairments beginning in mid-90's. (T. 922). He became very depressed, experienced sleeplessness, cried for no reason and felt helpless and anxious. (*Id.*). In 1999, he reportedly wanted to kill himself so he drank excessively and then drove his car into another car. (*Id.*). He has been diagnosed with bipolar disorder and polysubstance dependence, in remission. (T. 924). His mental impairments are treated with various medications. (T. 922, 924).

Reynolds also has a long-standing history of drug and alcohol abuse, including experimenting in the 1980's and in 2001 with heroin and mushrooms, smoking marijuana regularly until 1985, and using crack cocaine in 2009. (T. 925). He reportedly "medicated" himself with alcohol and drugs to drown his depression. (*Id.*). He has two felony convictions for driving while intoxicated from 1999 and 2007. (*Id.*). He has been in and out of jail on these charges and for violating terms of probation. (T. 923).

In 1994, Reynolds divorced his wife. (T. 925). In 2000, he lost his house. (*Id.*). In 2004, reportedly his ex-wife was killed by a train while she walked drunk along the train track. (T. 922, 925). In 2011, reportedly a woman stayed with him and robbed him of $700 in jewelry. (T. 926).

In 2010, Reynolds underwent triple bypass surgery. (T. 925). He had hernia repair in 2011. (T. 924). He also has asthma and multiple joint arthritis. (T. 925).

[3] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 9).

nonattorney representative. (*Id*.). ALJ Gale denied Reynolds's applications in a written decision on September 28, 2009. (T. 104-112).

The Appeals Council granted Reynolds's request to review, vacated the hearing decision, and remanded the case back to ALJ Gale. (T. 113-16). In its remand order, the Appeals Council directed that further consideration be given to Reynolds's maximum residual functional capacity, and, if warranted, obtain evidence from a vocational expert in order to clarify the effect of the assessed limitations on Reynolds's occupational base.[4] (T. 114-15).

ALJ Gale conducted a new evidentiary hearing. (T. 10, 32-67). Reynolds attended, and testified, as did an impartial vocational expert, David Sypher ("VE Sypher").[5] (*Id*.). Reynolds was represented at this hearing by counsel, Peter A. Gorton, Esq. (*Id*.). ALJ Gale received into evidence (a) additional testimony from Reynolds, (b) testimony from VE Sypher, (c) forensic reports from treating sources and state agency consultants, and (d) Reynolds's medical treatment records. (T. 32-67).

ALJ Gale denied Reynolds's applications in a lengthy written decision on January 5, 2012. (T. 10-24). Reynolds requested Appeals Council review. (T. 6). Attorney Gorton submitted a brief chronicling Reynolds's disagreements with

---

[4] While Reynolds's appeal of ALJ Gale's decision was pending before the Appeals Council, Reynolds filed subsequent applications for benefits. (T. 115, 238-48). The Appeals Council ruled that its action regarding Reynolds's first applications rendered Reynolds's second applications duplicative. (*Id*.). The Appeals Council directed the administrative law judge on remand to "associate" Reynolds's applications, and render a new decision on the associated claims. (*Id*.).

[5] Although the hearing transcript refers to the vocational expert as David Seiffer (T.32) and the record does not contain the expert's vitae, this report uses ALJ Gale's designation of the expert as David Sypher. (T. 10).

ALJ Gale's decision. (T. 447-48). The Appeals Council denied Reynolds's request for review (T. 1-6); Reynolds then instituted this proceeding.

### III. Commissioner's Decision[6]

ALJ Gale found that Reynolds suffers from several severe impairments consisting of "degenerative disc disease of the lumbar spine, status post coronary bypass surgery, bipolar disorder, and affective disorder with substance abuse." (T. 13). These impairments, while not presumptively disabling under the Commissioner's "Listings,"[7] diminish Reynolds's capacity for work-related activities such that his current physical residual functional capacity is for work only at the sedentary exertional level. His capacity for work at that level is further decreased by postural, environmental, and mental limitations.[8] (T. 17).

---

[6] ALJ Gale utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[7] The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

[8] ALJ Gale's full residual functional capacity finding was:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), in that the claimant is able to lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand for one hour in an eight-hour workday, walk for one hour in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant is able to occasionally push/pull and reach overhead with both hands, and he is able to frequently reach in all other directions. The claimant is able to continuously handle, finger, and feel, and frequently operate foot controls. He is able to occasionally climb stairs, ramps, ladders, and scaffolds, stoop, kneel, crouch, and crawl, and he is able to frequently balance. The
> (continued...)

ALJ Gale posed this residual functional capacity hypothetically to VE Sypher who testified that a person with such capacity can still perform Reynolds's past relevant work as a "product dis-assembler" (sedentary/semi-skilled) as it was actually performed by Reynolds. (T. 22, 57-58). ALJ Gale asked VE Sypher whether other available jobs exist that such a person can perform. VE Sypher responded affirmatively, and identified representative occupations of "final assembler" (sedentary/unskilled) and "table work" (sedentary/unskilled). (T. 23, 57-58).

---

[8](...continued)
claimant is able to tolerate occasional exposure to unprotected heights, respiratory irritants, extreme temperatures, and vibrations, and he is able to tolerate frequent exposure to humidity/wetness, moving mechanical parts, and operate a motor vehicle. The claimant is able to handle moderate noise levels. The claimant is able to shop, travel without a companion, ambulate without assistive devices, walk a block at a reasonable pace on rough/uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace, prepare a simple meal and feed himself, care for his personal hygiene, and sort, handle, and use paper files. Although the claimant has moderate limitations with his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, maintain socially appropriate behavior, and respond appropriately to changes in the work setting, the claimant has no limitations in his ability to complete a normal workday and workweek without psychologically-based interruptions, perform at a consistent pace without an unreasonable number of rest periods, interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, set realistic goals, and make plans independently of others. Additionally, the claimant has no significant limitations with his ability to remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination or proximity to others without being distracted by them, make simple work-related decisions, and ask simple questions or request assistance.
(T. 17).

Based on VE Sypher's testimony and the "framework" of Medical-Vocational Rules 201.15 and 201.07,[9] ALJ Gale concluded that a finding of "not disabled" was appropriate. (T. 23). Reynolds's application was denied, therefore, on the basis that his impairments do not prevent his performance of substantial gainful employment. (T. 23-24).

## IV. Points of Alleged Error

Reynolds's brief proffers three errors, the first of which is as follows:

> The vocational expert testified that in light of Plaintiff's mental impairment, there are no jobs that he can perform.

(Dkt. No. 19, p. 8).[10] In argument, Reynolds contends that the decision denying his application is unsupported by substantial evidence because it contravenes ALJ Gale's finding that Reynolds has "moderate" mental limitations and VE Sypher's testimony that a greater than 10% limitation in any one of several areas of mental capacity (*i.e.*, concentration, persistence, pace, social functioning and maintaining a regular schedule) precludes an individual from retaining employment. Reynolds's challenge is based on a hypothesis that a "moderate" mental limitation necessarily equates with a 10% or more diminution of capacity for ordinary work activity.

---

[9] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Medical-Vocational Guidelines are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. They "take into account a claimant's residual functional capacity, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (summary order) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

[10] The remaining proffered errors are:

B.   The ALJ violated the treating physician rule; and,

C.   The ALJ failed to develop the record.

(Dkt. No. 19, pp. 13, 15).

The Commissioner responds that Reynolds's assumption (that a "moderate" functional mental limitation equates to a 10% diminishment in capacity for ordinary work activity) is unsupported supposition. (Dkt. No. 15, p. 17). The Commissioner further makes a *post hoc* contention that if ALJ Gale had found such a diminishment, he would have so stated in his residual functional capacity assessment. (*Id.*).

Weighing these competing arguments must be done in light of governing legal principles regarding mental impairment assessments and ALJ Gale's specific findings of fact. These two threshold issues are addressed next in Sections V and VI.

### V. Mental Capacity

When mental impairments are present, determinations of functional limitations stemming therefrom are accomplished in the aftermath of application of a "special technique" set out in 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e); *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (describing analysis). This technique, summarized in the note below, helps administrative law judges determine at Step 2 of sequential evaluation whether claimants have medically determinable mental impairments and whether such impairments are severe.[11] It further aids Step 3 determinations of whether severe mental

---

[11] An administrative law judge "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [those] findings." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Next, the administrative law judge must assess the degree to which the claimant's impairment functionally limits his or her "ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*, at §§ 404.1520a(c)(2), 416.920a(c)(2). To complete this assessment, the technique requires the administrative law judge to "rate[s] the degree of [the claimant's] functional limitation" in four functional areas: (1) "[a]ctivities of daily living;" (2) "social functioning;" (3) "concentration, persistence, or pace;" and (4) "episodes of decompensation." *Id.*, at §§ 404.1520a(c)(3), 416.920a(c)(3).
(continued...)

impairments meet or are equivalent in severity to any presumptively disabling mental disorder as set forth in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).[12]

Under this technique, *functional effects* of mental impairments are factored.  Steps 2 and 3 functional limitation findings, however, are not a mental residual functional capacity determination.  An administrative law judge assessing residual functional capacity "cannot simply rely on the limitations articulated in the severity analysis at steps two and three of the sequential analysis, but must instead provide '*a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments.*'"  *Ladue v. Astrue*, No. 3:12–cv–600 (GLS), 2013 WL 421508, at *3 n.2 (N.D.N.Y.

---

[11](...continued)

For the first three functional areas, the administrative judge provides a rating of either "[n]one, mild, moderate, marked, [or] extreme."  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  For the fourth category—episodes of decompensation—the administrative judge provides a rating on a four-point scale: "[n]one, one or two, three, four or more."  *Id.*

The administrative law judge uses these ratings to determine the severity of the claimant's alleged mental impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  The administrative law judge generally will conclude that the claimant's mental impairment is not severe if the claimant receives a rating of "none" or "mild" in each of the first three areas and "none" in the fourth area. *Id.*, at §§ 404.1520a(d)(1), 416.920a(d)(1); *Kohler*, 546 F.3d at 266.

[12]  This is done "by comparing the medical findings about [the claimant's] impairment(s) and the rating of the degree of functional limitation to the *criteria* of the appropriate listed mental disorder."  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2)(emphasis added).  For each listed disorder, there are "paragraph A" criteria, which set forth the disorder's specific medical characteristics, and "paragraph B" criteria, which set forth the functional limitations that the impairment must cause in order for the individual to be considered per se disabled.  *See* 20 C.F.R. § 404, subpt. P., app. 1, § 12.00(A). For some disorders, there are also "paragraph C" criteria, which are to be considered in the alternative if the paragraph B criteria are not satisfied.  *See id*. A claimant will be found disabled if her impairment fulfills the requirements set forth in paragraph A, and the requirements of either paragraph B or C, for the disorder in question.

Feb. 1, 2013) (quoting SSR 96–8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996)) (emphasis added)).

SSR 96-8p mandates this "more detailed assessment," and makes clear that when assessing residual functional capacity, primary focus must be on "an assessment of an individual's ability to do sustained *work-related* physical and mental activities in a *work setting* on a *regular and continuing basis.*" SSR 96–8p, TITLE II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *1, 7 (SSA July 2, 1996) (emphasis added). Thus, what is essential is evaluation of functional effects of mental impairments on *work-related activities* such as understanding, carrying out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting. *See id.*, at *6.

## VI. Findings

ALJ Gale applied the special technique at Steps 2 and 3 of sequential evaluation. And, with respect to the broad and general functional area of "concentration, persistence and pace," he rated Reynold as having "moderate" difficulties. (T. 16). Next, with respect to a "more detailed assessment" of residual functional capacity, ALJ Gale examined specific work-related activities relating to concentration, persistence and pace. ALJ Gale again found that Reynolds has "moderate" limitations with his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for

extended periods, maintain socially appropriate behavior, and respond appropriately to changes in the work setting.[13] (T. 17).

## VII. Discussion

*A. Expert Vocational Testimony*

VE Sypher, after hearing ALJ Gale's full residual functional capacity assessment (reprinted above in note 8), opined that a person with that capacity can perform work as a product disassembler (prior relevant work), final assembler and table worker (alternative work). (T. 52-58). On cross examination, VE Sypher was asked to consider a hypothetical circumstance in which a person suffers from more than a 10% diminution in ability to function in various work-related activities within the broad category of concentration, persistence and pace.[14] VE Sypher testified that a person who, because of

---

[13] In what seems inconsistent with moderate limitations, ALJ Gale also found that Reynolds has no limitations in his ability to complete a normal workday and workweek without psychologically-based interruptions, interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them. Additionally, he found that Reynolds has no significant limitations with his ability to remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination or proximity to others without being distracted by them, make simple work-related decisions, and ask simple questions or request assistance. (T.17).

[14] The work-related activities posed were:

- ability to concentrate or maintain attention (T. 59);
- ability to perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances (T. 61);
- ability to interact or get along with either supervisors, the general public, or with coworkers (T. 63-65); and
- ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods would erode or significantly eliminate available jobs (T. 65-66).

impairments is absent more than once a month, or who has a 10 % diminution in the posited functional mental abilities is unemployable. (T. 62, 63-66).

B.   *Reynolds's Hypothesis*

Reynolds argues that ALJ Gale's findings of *moderate* mental limitations at Steps 2 and 3 and again in his more-detailed residual functional capacity assessment equates to diminishment of 10% or more in Reynolds's ability to engage in work activities. Thus, a finding of "not disabled" is at odds with both VE Sypher's cross examination testimony and the mental limitations ALJ Gale found in Reynolds's residual functional capacity assessment.

C.   *Application*

Terms like "none" and "extreme" carry common, natural-language meanings not likely to generate misunderstanding or ambiguity when used to rate functional mental limitations. Terms like "mild," "moderate," and "marked," however, are inherently vague, and the Commissioner has provided no illuminating term-of-art definitions.[15] Logically, "moderate" fits somewhere within the middle of a spectrum, and Reynolds cites several cases wherein courts, under various and non-analogous factual scenarios, have equated "moderate" with a mid-range mathematical percentage describing the amount of time a person with a moderate limitation is unable to perform competitive

---

[15] According to the Commissioner, "moderately limited" means only that a claimant's capacity is impaired; it does not indicate the degree and extent of the limitation. *See* Program Operations Manual System (POMS) DI 24510.063, *available at https://secure.ssa.gov/apps10/poms.NSF/lnx/0424510063* (last visited July 8, 2014).

work.[16] A person unable to perform work 10% of the time would fit easily within these cases' definitions of "moderate."

There is some appeal to Reynolds's theorem, but, as the Commissioner's brief argues, it may well be that percentages of inability to work cannot be ascribed to mental limitations without engaging in rank speculation. And, even if they *could* be reliably imputed, they might not consist of an equalized mathematical progression (*e.g.,* none = 0%, mild = 1 - 25 %, moderate = 26-50%, marked = 51-75%, extreme = 76 - 100%). When determined by someone with expertise in the field, a "moderate" limitation might match a much lower or much higher percentage than advocated by Reynolds.

The undersigned, therefore, declines to accept Reynolds's invitation to declare that moderate mental limitations found by ALJ Gale equate to an inability to perform the mental requirements of competitive and remunerative work 10% or more of the time. *If* it is possible to match terms like "mild," "moderate," and "marked" with discrete percentages of time that individuals likely cannot meet mental demands of work, that prerogative lies exclusively with the Commissioner or a qualified expert witness, not a reviewing court.

---

[16] Reynolds's brief cites *Punzio v. Astrue*, 630 F.3d 704, 711 (7th Cir. 2011) (noting that the claimant's "lawyer and the vocational expert defined a moderate limitation to mean an inability to perform to competitive standards between 20 percent and 30 percent of the time–and that the vocational expert explained that a moderate limitation would be 'well beyond what's tolerated in unskilled work.'"); *Black v. Commissioner of Soc. Sec.*, No. 5:11CV2770, 2012 WL 4506018, at *14 & n.8 (N.D. OH Sep. 28, 2012) (noting "the definition of moderate limitations as functioning between twenty-five to fifty percent of the time); *Estrada v. Astrue*, No. 10 C 1639, 2011 WL 65182, at *14 (N.D. Ill. Jan. 4, 2011) (noting that the administrative law judge equated a moderate limitation with a 20 to 50% reduced ability); *Green v. Commissioner*, 2009 WL 2365557, *10 (E.D. Mich. July 28, 2009) (moderate limitations defined as "anything less than 20%–30% of the time."*); Woodley v. Astrue*, 572 F. Supp.2d 638, 649 (D. S.C. 2008) (testimony that a moderate limitation is "[m]ore than 50 percent.").

On the other hand, "moderate" inevitably contemplates *some* diminishment in capacity for work. And, if the term is suitable for use in residual functional capacity assessments, it surely must connote *something* susceptible to objective correlation. Given the additional evidence adduced by Reynolds through cross examination of VE Sypher that a person with 10% inability to meet mental demands of ordinary work is unemployable, it was incumbent on ALJ Gale to articulate a plausible reason or explanation as to why Reynolds's moderate mental limitations do not rise to that level.

VE Sypher's cross examination testimony did not altogether escape ALJ Gale's attention. ALJ Gale expressly discounted it in connection with his finding that Reynolds has work skills from past relevant work that are transferable to other occupations. (T. 23). Specifically, he stated:

> [R]educed weight has been given to the cross-examination of the vocational expert because it included limitations *significantly greater* than those in the residual functional capacity listed above.

(*Id*.) (emphasis added). Unfortunately, this *ipse dixit* statement begs the question of how ALJ Gale reached that conclusion. ALJ Gale provides no rationale whatsoever for deciding that a 10% diminution in mental capacity for ordinary work activities is "significantly greater" than the moderate mental limitations he found at Steps 2 and 3, and again in his assessment of Reynolds's residual functional capacity. A reviewing court, therefore, cannot decide whether the ultimate decision is supported by substantial evidence or not. In such circumstance, it must remand the action for clarification.

*D.    Other Issues*

Appropriateness of remand is punctuated by other deficiencies that leave a reviewing court adrift when trying to decide whether the Commissioner's decision is supported by substantial evidence.  First, ALJ Gale's residual functional capacity finding (reprinted in full above in note 8) is excessively long. It required almost a full page of small-font, single-spaced type simply to print. By virtue of its sheer length, it strains credulity to think that VE Sypher could assimilate it thoroughly *via* a single oral declaration by ALJ Gale during a short evidentiary hearing, and then extemporaneously provide a fully-considered opinion.

Of equal or more importance, ALJ Gale's residual functional capacity assessment was confusing. On one hand, ALJ Gale's residual functional capacity finding was that Reynolds has *moderate* limitations in maintaining socially appropriate behavior.  On the other, he found that Reynolds has *no limitations* in interacting appropriately with the general public, responding to supervisor criticism and getting along with co-workers or peers without distracting them. Similarly, ALJ Gale found that Reynolds has *moderate* limitations in his ability to respond appropriately to changes in the work setting, but *no limitations* in his ability to be aware of normal hazards and take appropriate precautions, ability to travel in unfamiliar places or use public transportation, and ability to set realistic goals or make plans independently of others.  Further, ALJ Gale found that Reynolds has *moderate* limitations in his ability to understand, remember and carry out detailed instructions, but *no significant limitations* to remember and carry out very short and simple instructions.  One is hard-pressed to

imagine how VE Sypher could respond meaningfully to a hypothetical question posing these antipodal functional limitations.

Finally, ALJ Gale's decision gives no clue as to how his elongated residual functional capacity finding accommodates or takes into account Reynolds's moderate mental limitations in ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, maintain socially appropriate behavior, and respond appropriately to changes in the work setting.  A residual functional capacity for sedentary work with postural and environmental limitations accommodates Reynolds's *physical* impairments, but if there is an evidentiary basis for concluding that semi-skilled and unskilled work automatically takes into account the moderate *mental* limitations just mentioned, it appears nowhere in the decision.  This renders ALJ Gale's findings at Step 4 and Step 5 of sequential evaluation unsupported by substantial evidence, and raises a specter of concern that ALJ Gale may have inadvertently forgotten the moderate limitations he found under the special technique for evaluating severity of mental impairments and also at the outset of his residual functional capacity assessment.

## VIII.  Recommendation

The Commissioner's decision should be REVERSED, and the case should be REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings in accordance with this recommendation.

## IX.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___9___ day of _____July_____ 2014.

*[signature: Earl S. Hines]*

Earl S. Hines
United States Magistrate Judge